GROUP NO. I OIL CORPORATION v. SHEP-
PARD, Comptroller, et al.

No. 8159.

Court of Civil Appeals of Texas. Austin.
Nov. 27, 1935.

Rehearing Denied Dec. 18, 1935.

James J. Cosgrove, of New York City,
and Burney Braly, G. R. Pate, and John
A. Braly, all of Fort Worth, for appellant.

Wm. McCraw, Atty. Gen., and Hubert T.
Faulk, Asst. Atty. Gen., for appellees.

Black & Graves, of Austin, amici curiæ.

BLAIR, Justice.

Appellant, Group No. 1 Oil Corporation,
sued appellees, Geo. H. Sheppard, State
Comptroller, and Charley Lockhart, State
Treasurer, for the refund of certain gross
production taxes on oil, which appellant
paid under written protest to appellees.
The taxes were alleged to have been
wrongfully demanded and collected as be-
ing due under the provisions of House Bill
No. 154, c. 162, Acts 43d Legislature
(1933), as amended and reenacted by
House Bill No. 55, c. 12, of the 1st Called
Session of the same Legislature (1933),
which acts will be herein referred to as
H. B. 154, or the act, the material portions
of which read as follows:

"Section 1. (1) For the purpose of this
Act 'producer' shall mean any person or
persons, corporation, partnership, individ-
ual, trustee, receiver, trust estate or ad-
ministrator owning, controlling, managing
or leasing any oil well or any person who
produces in any manner any oil by taking
it from the earth or waters in this State.
* * *

"Sec. 2. (1) There is hereby levied an
occupation tax on oil produced within this
State of two (2) cents per barrel of forty-
two (42) standard gallons. * * *

"(2) The tax hereby levied shall be a li-
ability of the producer of oil and it shall
be the duty of such producer to keep ac-
curate records of all oil produced, making
monthly reports under oath as hereinafter
provided.

"(3) The purchaser of oil shall pay the
tax on all oil purchased and deduct tax so
paid from payment due producer or other
interest holder, making such payments so
deducted to the Comptroller of Public Ac-
counts by legal tender or cashier's check
payable to the State Treasury.

"Provided, that if oil produced is not
sold during the month in which produced,
then said producer shall pay the tax at the

same rate and in the manner as if said oil were sold * * *

"(6) The tax nerem levied shall be borne ratably by all interested parties, including royalty interests; and producers and/or purchasers of oil are hereby authorized and required to withhold from any payments due interested parties, the proportionate tax due." Acts 1933, c. 162, § 1.

The refund of three items of taxes was sought by appellant's petition. The sum of $1,326.25 alleged to have been wrongfully demanded and collected by appellees as the gross production tax on the one-eighth royalty interest of the State University in the oil produced from its Reagan county lands by appellant as lessee thereof and as producer of the oil. The taxes were paid either by appellant or by the purchaser of the oil in the manner prescribed by the taxing act. Another item was for the sum of $209, which was also demanded and collected by appellees as the gross production tax on the one-eighth royalty interest of the university in the oil produced from its lands in Reagan county. The third item was for the sum of $242.27, as to which item appellant alleged that in addition to being a producer of oil, it was the owner of and entitled to receive royalties on oil produced in divers and sundry places from privately owned lands; that the producing operations were conducted by other corporations as lessees; and that these lessees, or purchasers from them, had deducted from settlements with appellant for its royalty interests the sum of $242.27, and in turn had remitted that amount to appellees. The legal consequence was that appellant had thereby been forced to pay and had paid the sum of $242.27 to appellees as the gross production or occupation tax on its royalty interests in the privately owned lands. All of the claims covered payments of taxes for the months of September and December, 1933; and the payments were made under the written protest of appellant as required by H. B. No. 11, c. 214, Acts of 1933, 43d Legislature (Vernon's Ann.Civ.St. art. 7057b), which provides that such protested taxes be kept in the "Cash Suspense Book" or account, subject to the suit of the taxpayer for its refund, if unlawfully collected.

The trial court sustained the general demurrer and several special exceptions of appellees to the petition of appellant, and upon its declining to amend dismissed the suit. It was admitted by all parties that because of various constitutional inhibitions the university could not be charged with the gross production tax on its one-eighth royalty interest in the oil produced from its lands; but the trial court construed the act as imposing the gross production tax due on the one-eighth royalty interest of the university upon appellant, the "producer" of the oil, as that term is defined in section 1 of the act; and accordingly sustained the general demurrer.

By an excellent brief the Attorney General seeks to sustain the trial court's construction of the act, and to defend it against the attack that if so construed the act is unconstitutional. On the other hand, by the excellent briefs of counsel for appellant and of Messrs. Black and Graves, appearing amici curiæ, representing the Big Lake Oil Company, a lessee of oil-producing lands belonging to the university, the contention is made that under a proper construction of the act, the gross production tax on oil is levied against the various interest holders, including the producer and royalty owners, in proportion to their respective interests, and as thus construed no greater burden is imposed by the act on the lessees of university lands than on other lessees of oil-producing lands privately owned. That if the act be construed as imposing the tax upon the lessee producer of oil from university lands on all of the oil produced, and as imposing the tax upon producers of oil from privately owned lands at the same rate per barrel, but on only a fraction or portion of the oil produced, the act is void as being violative of the equal taxation clauses of sections 1 and 2 of article 8, and the equal right clause of section 3 of article 1, of the Texas Constitution; and of the equal protection and the due process clauses of both the State and the Federal Constitutions (Const.Tex. art. 1, § 19; Const.U.S. Amend. 14, § 1), because there is no difference between the situations or occupations of producers of oil from lands owned by the State University and the producers of oil from lands privately owned, which bear any just or reasonable relation to the object or purpose of the act. And appellant contends that the Legislature cannot, under the guise of an occupation tax on the gross production of oil, validly levy the tax against the owners of royalty interests in the oil produced within this state, for the reason that, with respect to such royalty ownership, they are neither engaged in an occupation nor doing

business as contemplated by article 8 of the State Constitution.

■ We construe the act to levy the tax against the various interest holders in the oil produced, including the producer and royalty owners other than the university, in proportion to their respective interests; that under this construction of the act no greater burden is imposed on lessees of the university lands than on other lessees of privately owned lands under similar leases for the production of oil; and that as thus construed the act is valid and constitutional. We also hold that for the purpose of levying a gross production or occupation tax on oil, the Legislature may validly declare the owners of royalty interests in the oil produced to be engaged in the occupation or business of producing oil.

When construed together, subsections 2 and 6 of section 2, as amended by Acts 1933, 1st Called Sess., c. 12, § 1 (Vernon's Ann.Civ.St. art. 7057a, § 2, subd. 2, 6), clearly impose the tax "ratably" against "all interested parties, including royalty interests," and make the producer primarily liable for the payment of the tax. The language that "the tax herein levied shall be borne ratably by all interested parties, including royalty interests," is clear and means that the tax is levied ratably or in proportion to the interest each party has in the oil produced. The language of subsection 6 of section 2, as amended (Vernon's Ann.Civ.St. art. 7057a, § 2, subd. 3), that the "producers and/or purchasers of oil are hereby authorized and required to withhold from any payment due interested parties, the proportionate tax due," is also clear and means that a portion of the tax is due from each interested party. If the tax had been levied against the purchaser only, different language would have been employed by the Legislature. There was no reason for providing that the tax be paid ratably or proportionately by all interested parties, if the Legislature had intended to levy the tax against the producer only. The act clearly designates the parties against whom the tax is levied, the amount each is to pay, and other incidences of the tax.

The provision that "the tax hereby levied shall be a liability of the producer" does not mean that the tax is levied only against the producer. This provision must be construed together with the other provisions of the act which declare that the tax is levied against all interested parties ratably or in proportion to their respective interests in the oil produced.

Nor is the provision that the tax be paid ratably by all interested parties in any manner affected by the provision for the payment of the tax by the producer or purchaser. The provision for a single payment, either by the producer or purchaser, is solely in the interest of the convenient and effective administration of the taxing act. An analogous question was decided in the case of Byrne v. Fulton Oil Co., 85 Mont. 329, 278 P. 514, 518, wherein the court say: "The method of making the operator and the royalty holder jointly liable for the tax and authorizing the operator to withhold from the proceeds of the royalty interest the amount of any tax paid by him, was intended as a certain and expeditious method of collecting taxes on such property, and preventing the possibility of any of it escaping taxation. It was designed to authorize the collection of the tax at the source of the product, in order to avoid the necessity of seeking out each royalty holder for the purpose of effecting collection."

The legislative intent to levy the tax ratably against all interested parties in the oil produced is also clearly evidenced by the language that "the purchaser of oil shall pay the tax on all oil purchased and deduct tax so paid from payment due producer or other interest holder," and "withhold from any payment due interested parties, the proportionate tax due." Vernon's Ann.Civ. St. art. 7057a, § 2, subds. 3, 6. These provisions do not levy the tax against the purchaser. He is merely made the agent of the state to collect from the producer or other interest holders the total amount of the tax due; and he is authorized to charge their respective accounts with "the proportionate tax due." That is, the purchaser withholds from the producer only as an interest holder and only to the extent of his interest. Likewise the purchaser withholds from other royalty or interest holders the amount of the tax due on their royalty or other interests. The act, therefore, designates the parties against whom the tax is levied. The amount of the tax due by each is also defined or measured by the extent of interest in the oil produced, or the amount paid because it was produced. This language and these provisions must be given practical effect and application in the interpretation or construction of the act; and since the purchaser is given the

right, in making payments due the producer or other interest holders, to withhold the sum of money equal to "the proportionate tax due," it must be held that the act imposed the tax on the producers and other interest holders ratably or in proportion to their respective interests in the oil produced. The language of the act is plain, unambiguous, and susceptible of no other reasonable interpretation or construction.

This construction is not only supported by the clear and unambiguous language of the act, but is required to save it from the vice of unconstitutionality. It is clear that if the producer is liable for the entire tax on oil produced on university lands and the producer of oil from privately owned lands is liable for the tax on only seven-eighths of the oil produced, a greater burden, or an unequal taxation burden, will be placed upon the producer of oil from university lands. Since, however, we hold that the practical effect of the act is to impose the tax on the producer and other interest or royalty holders ratably or in proportion to their respective interests, and since the act placed the collection of the tax in the hands of the producer to such an extent that he can never be required to pay more than his proportionate part of the tax, we do not need to discuss at length the constitutionality of the act as against the attacks made by appellant.

Suffice it to say that under our above construction of the act no greater tax burden has been placed or imposed by it on lessees of university lands than on lessees of privately owned lands being operated for oil under the same or similar lease contracts. The lessee or producer under a lease from the state or university receives seven-eighths of the oil produced, or its value, as consideration for the development of the lease, and the state or university owns or receives a "royalty interest" of one-eighth, or a "sum of money equal to a royalty of one-eighth of the value of the gross production of petroleum." Section 7 (2), General Laws 1917, c. 83, pp. 158, 160. This "royalty" is payable in money, but is secured by a statutory lien on the oil and improvements on the property. The courts (Theisen v. Robison, 117 Tex. 489, 8 S.W. (2d) 646) interpret the act of 1917 as conveying to the lessee title to all the oil and gas in place; and appellees therefore contend that lessee must pay all the tax imposed by the act involved in this suit, without any deduction on account of the uni-

versity's royalty interest. Lessee may not be the producer, and may receive an interest in the oil from the producer. It is also a matter of common knowledge that many leases on privately owned lands provide that the one-eighth "royalty" is to be paid in money received from the sale of the oil produced. Others provide for the delivery of one-eighth of the oil produced as royalty, and in which leases the lessee acquires title to only seven-eighths of the oil; the lessor reserving title to the remaining one-eighth. So, it is manifest that the same distinction which appellees urge with respect to the character of title acquired under a state lease and some private leases can also be made as between private leases. Certainly the same distinction and discrimination would exist in applying the taxing act to operations under private leases having similar royalty provisions to state or university leases. But whatever the character of the lease, or whether a state or a private lease, there is always reserved a royalty interest of one-eighth of the oil or a royalty interest equal to one-eighth of the value of the oil produced, sold or unsold, and manifestly this is the "royalty interest" within the contemplation of the taxing act in suit, and against the owner of which the tax was levied. And manifestly the lessee under a state or university land lease assumes substantially the same obligations, expressed and implied, as are assumed by lessees of privately owned lands which have for their purpose the diligent and proper development of the lands for oil, to the end that the amount of the royalty which may be due either in oil or its equivalent may be as large as possible. It may be further observed here that the distinction urged by appellees has not been looked upon with favor by the courts, but all royalty interests have been placed upon a level by them. At least that is the present tendency of court decisions. Sheffield v. Hogg (Tex. Sup.) 77 S.W.(2d) 1021; Ehlinger v. Clark, 117 Tex. 547, 557, 8 S.W.(2d) 666; State v. Armson, 166 Minn. 230, 207 N.W. 727, 730.

It is also manifest that the tax is not dependent upon the character of title under which the producer produces the oil. Nor is the tax levied on the oil in place. The tax is levied on the business or occupation of producing the oil. The lessees or producers engaged in producing oil on university lands are engaged in the taxed occupation in the same manner as are those

who produce oil from privately owned lands, and it would seem that the source or character of title would have nothing to do with the nature of the occupation or business, and such matters are irrelevant with respect to the purpose of the taxing act. Quaker City Cab Co. v. Com. of Pennsylvania, 277 U.S. 389, 400, 48 S.Ct. 553, 72 L.Ed. 927; Louisville Gas & Electric Co. v. Coleman, 277 U.S. 32, 37, 48 S. Ct. 423, 72 L.Ed. 770; Southern Railway Co. v. Greene, 216 U.S. 400, 417, 30 S.Ct. 287, 54 L.Ed. 536, 17 Ann.Cas. 1247.

Nor does the fact that the state or university is not liable for the tax levied against the royalty interest enlarge or change the tax liability of the lessee or producer of oil on university lands. This is because, as herein above pointed out, the levy of the tax is made against or limited to the interest of the lessee or producer. The taxing act clearly provided that the royalty interest would be taxed against the owner or holder of the royalty interest. And the fact that the royalty interest belongs to the university, and the fact that the tax cannot be levied against it, does not increase appellant's liability for the tax, but appellant is only required to pay the proportion of the tax levied against it by the taxing act. In the case of Davis v. Wallace, 257 U.S. 478, 42 S.Ct. 164, 166, 66 L.Ed. 325, it is held as follows: "Where an excepting provision in a statute is found unconstitutional, courts very generally hold that this does not work an enlargement of the scope or operation of other provisions with which that provision was enacted, and which it was intended to qualify or restrain. The reasoning on which the decisions proceed is illustrated in State ex rel. McNeal v. Dombaugh, 20 Ohio St. 167, 174. In dealing with a contention that a statute containing an unconstitutional proviso should be construed as if the remainder stood alone, the court there said: 'This would be to mutilate the section and garble its meaning. The legislative intention must not be confounded with the power to carry that intention into effect. To refuse to give force and vitality to a provision of law is one thing, and to refuse to read it is a very different thing. It is by a mere figure of speech that we say an unconstitutional provision of a statute is "stricken out." For all the purposes of construction it is to be regarded as part of the act. The meaning of the Legislature must be gathered from all they have said, as well from that which is ineffectual for want of pow-er as from that which is authorized by law.'"

The act merely levied the tax against royalty and other interests ratably, and we do not regard the tax as having been levied against the state or university royalty interest, because the Legislature will be presumed to know that the tax could not be lawfully levied against the state or university. Since, however, appellant's tax liability was limited to its interest in the oil produced, and since by subtracting the tax on the royalty interest of the university, because the tax on such interest if levied by the act was void, appellant's liability was not increased nor enlarged because the attempt to tax the university's royalty interest was void. See, also, Texas-Louisiana Power Co. v. Farmersville (Tex.Com.App.) 67 S.W.(2d) 235.

We are also clear in the view that for the purpose of levying the gross production tax on the occupation or business of producing oil, the Legislature may validly declare the owners of royalty or other interests in the oil produced to be engaged in the occupation or business of producing oil. The ordinary form of oil lease has a dual character or purpose: (1). The conveyance of an estate in the land for development purposes; and (2) the future development and operation of the lease for oil in accordance with the terms, express and implied, of the contract for the mutual benefit of the parties, their respective benefit being measured by the extent of their interests in the oil produced, or its value. The law is settled that the primary objective or purpose of the oil lease is the production of oil for the mutual profit of the parties. The consideration moving to the lessor is an interest in the oil or its value in money. Thus he has a direct interest in the success of the business. As the holder of the royalty interest the lessor or royalty owner is not only entitled to share in the gross production of the oil, but may under the terms of the lease, expressed or implied, require proper, prudent, and diligent management and development of the business, and has reserved and is entitled to both legal and equitable remedies necessary to enforce the obligations of the lease, and under some circumstances may forfeit the lease for nondevelopment. Texas Co. v. Davis, 113 Tex. 321, 254 S.W. 304, 255 S.W. 601; Robinson v. Jacobs, 113 Tex. 231, 254 S.W. 309; Thomason v. Ham, 113 Tex. 239, 254 S.W. 316; Munsey

v. Marnet Oil & Gas Co., 113 Tex. 212, 254 S.W. 311.

The tax of 2 cents per barrel on oil produced is a gross production or gross receipts tax, the amount of the tax being measured by the gross activity of the business, and is under the authorities an occupation tax. Galveston, H. & S. A. R. Co. v. Davidson (Tex.Civ.App.) 93 S.W. 436; Galveston, H. & S. A. Ry. Co. v. State of Texas, 210 U.S. 217, 28 S.Ct. 638, 52 L. Ed. 1031; Producers' Oil Co. v. Stephens, 44 Tex.Civ.App. 327, 99 S.W. 157; Kansas City Life Ins. Co. v. Love, 101 Tex. 531, 109 S.W. 863. And since the taxing act in suit contemplated a tax on gross production of oil, the amount of the levy being measured or determined by the gross receipts of the oil or business, we conclude that the Legislature may reasonably impose the tax burden on those entitled to share in the gross receipts or profits of the oil enterprise, particularly so since under the lease contracts royalty owners may enforce its express and implied covenants, looking to the proper and diligent development and management of the business, to the end that their share in the receipts will increase and produce a greater royalty interest in the business.

In accordance with our above conclusions, we affirm the judgment of the trial court as to the item of $242.27, paid as the gross production or occupation tax due on the royalty interest of appellant from privately owned lands; but the judgment otherwise dismissing the suit is reversed, and the cause remanded for trial of the facts alleged in the petition.

Affirmed in part, and in part reversed and remanded.