# THE ATTORNEY GENERAL
## OF TEXAS
ATTORNEY GENERAL


November 24, 1971

Honorable Robert S. Calvert
Comptroller of Public Accounts
Austin, Texas

Opinion No. M-1002

Re: Application of Natural Gas Production tax on deficiency payments under "take or pay" provisions of purchase contracts.

Dear Mr. Calvert:

We have received your request for an official opinion in regard to the proper application of Chapter 3, Title 122A, Taxation-General, Vernon's Civil Statutes, in calculating the tax on producers of natural gas receiving deficiency payments under "take or pay" provisions of certain gas purchase contracts.

In connection with your request you submit a detailed description of these special provisions which we may assume adequately presents the taxation problems inquired about. The terms of such contract are restated in substance as follows:

The "take or pay" provision thereof requires the buyer to purchase from the seller and pay for, whether or not received during each year, a determined minimum daily quantity of gas per month or per year as the case may be, at a price stated in terms of so many cents per 1,000 cubic feet (MCF). In case of failure of buyer to purchase during any year the minimum quantity contracted for, under contracts providing for annual minimum purchases, then within 30 days after such year he is required to pay seller for the amount of the deficiency, but he may at any time during the succeeding four years take and receive such deficiency at the market price then in effect, by paying therefor only the difference between the price in effect at delivery and the price actually paid for such deficiency under the contract. Under some contracts which provide monthly minimum gas purchases, even if buyer does not take the minimum amount during the month,

-4887-

he is required to pay for it but has the right to take the gas in succeeding months.  These latter provisions are referred to as "make-up" periods.  The typical contract in question expressly provides for the provisions and obligations thereof to go into effect upon the first deliveries of gas thereunder.  However, some of the contracts require the buyer to make minimum payments before any gas is produced, or purchased.

In connection with the foregoing described "take or pay" contracts you have informed us that for many years your office has taken the uniform position that the producer was liable for tax on the entire amount received under such contracts, whether or not the deficiencies, if any, were "made-up".

The specific questions submitted by you are as follows:

"1.  I would like your official opinion as to whether the tax levied by Article 3.01 is required to be reported and paid to Comptroller at the time the producer receives the minimum prepayment or at the time the gas is actually taken by the purchaser during the make-up period?

"2.  If your answer to question one is that the tax is required to be reported and paid at the time the gas is actually taken by the purchaser during the make-up period, and for some reason all or a part of the deficiencies in gas are not made up during the contractual make-up period and the purchaser has to forfeit any of the minimum prepayments, is the production tax due on the forfeited prepayments.  If the production tax is due, should the tax be computed at the tax rate in effect at the time the contractual make-up period expired?

"3.  If your answer to question one is that the tax is required to be reported and paid at the time the producer receives the minimum payment, please advise when the tax is due in those instances where the producer has received prepayments for a period of time before there was any gas produced or taken by the purchaser under the terms of the contract?"

Chapter 3, Title 122A, Taxation-General, Vernon's Civil Statutes, insofar as pertinent to the foregoing questions, provides as follows:

"Article 3.01
(1)  There is hereby levied an occupation tax on the business or occupation of producing gas within this State, computed as follows:

"A tax shall be paid by each producer on the amount of gas produced and saved within this State equivalent to seven and one-half per cent (7-½%) of the market value thereof as and when produced.

. . . .

"Article 3.03
(3)  The tax herein levied shall be due and payable at the office of the Comptroller at Austin on the last day of the calendar month, based on the amount of gas produced and saved during the preceding calendar month, and on or before said date each such producer shall make and deliver to the Comptroller a report on forms prescribed by the Comptroller showing the gross amount of gas produced, ... ." (Emphasis added)

The recent decision of our Supreme Court in Mobil Oil Corporation v. Calvert, 451 S.W.2d 889 (Tex.Sup. 1970), held, in substance, that the proper method of determining the tax due on production of natural gas under Chapter 3, Title 122A, Taxation-General, V.C.S., is to compute the tax on the market value of the gas at the mouth of the well measured by the total proceeds of sale. Article 3.02 provides for this measure.

It also has been held that the term "market value" as used in a former statute (of identical tenor and effect as our present statute, Art. 3.02) "means the price for which the producer sells the gas". Calvert v. Union Producing Co., 258 S.W.2d 176, (C.A.1953-No writ history).

Thus, according to the plain import of Chapter 3, Title 122A, Taxation-General, the tax therein levied is to be computed on the amount of gas produced and saved at the

rate of 7-1/2% of the <u>market value</u> of such gas <u>as and when</u> <u>produced.</u>  Consequently, until such gas is <u>produced</u> no tax can be computed thereon under the statute, and no tax is thereby assessed until production and a sale or other disposition thereof has occurred.  Mindful of the foregoing, we conclude that the tax levied by Article 3.01 is not due until actual production of the gas has occurred and such tax is then measured by its "market value" as provided in Article 3.02.  Attorney General Opinion No. WW-554(1959).

Hence, our answer to your question 1 is that the time such gas is actually produced during the make-up period, rather than the time of the minimum prepayment, is the taxable event with regard to the "make-up" gas.

Your question 2 concerns a situation where the deficiencies under the contract are not received during the make-up period and the minimum prepayments made under the contract are forfeited.  We assume that a substantial amount of gas was produced and sold under the contract, although less than the minimum on which the price was computed.  This default by the buyer under the typical contract described by you brings about an effect analogous to one that might be produced by a similar default of the buyer under a "take or pay" contract having <u>no provision</u> allowing the "make-up" of any deficiency below the minimum daily quantity of gas contracted for a specified time at a total price calculated on the basis of so many cents per 1,000 cubic feet (MCF).  This latter type of "no-makeup" contract has been called to our attention as being one of "the several different fact situations" arising under "take or pay" provisions of gas purchase contracts mentioned in your inquiry but not described in detail.

As a consequence of the absence of the production and the purchase of the deficiency by the buyer under either of the next foregoing described contracts, there is no <u>production</u> or <u>sale</u> thereof on which a tax could be assessed against such gas not produced and sold.  However, the price paid for the substantial <u>amount</u> actually purchased and received was set by the terms of such contracts at the <u>total figure</u> determined by the minimum amount of gas therein contracted for.  Whether the difference between the amount of gas agreed to be purchased and the amount actually received under the contracts is termed a "deficiency", and a proportionate part of the total contract price is called a "forfeiture", is of no import when considered in relation to the issue actually involved.

The paramount issue under each contract is the determination of the <u>total proceeds of the sale of the gross production under each of the contracts in question.</u>  There is no difficulty in determining the gross production.  This is the respective amount actually produced and purchased by buyers under the contracts.  Thus, the <u>total proceeds</u> of the gas actually produced under such contracts is the <u>total amount</u> received under the contracts, <u>including the payments calculated on the so-called deficiencies.</u>  The tax on the total amount of gas produced and purchased under such contracts is measured by such total proceeds of sale and based on the tax rate in effect at the time such gas is actually produced, rather than at the time of the minimum prepayments.

We are cognizant of the fact that a question of contract construction may arise independent of the proper construction of the tax statute and its application to each contract.  <u>Mobil Oil Corp. v. Calvert</u>, 451 S.W.2d 889(Tex.Sup.1970).  However, we are here passing only upon the construction to be placed <u>upon the tax statute</u>. The prior opinions of this office support the above con- clusion and would have to be overruled if we concluded otherwise.  This same holding and construction was made in Attorney General Opinion No. O-6355 (1946); and see also Opinion No. V-555(1948).

It is the policy of this office to follow earlier opinions on the same subject where not patently erroneous. Attorney General Opinions Nos. O-1659 (1939); C-69 (1963); and M-605 (1970).  This is likewise the rule followed by the courts concerning the meaning of a statute.  <u>Thomas v. Groebl</u>, 147 Tex.70, 212 S.W.2d 625 (1948).  Such a construction also is entitled to great weight where, as here, it has been followed over a period of years by the state agency charged with the administration and enforcement of the statute. <u>Thompson v. Calvert</u>, 301 S.W.2d 496,(Tex.Civ.App. 1957, no writ), <u>Gaynor Construction Co. v. Board of Trustees</u>, etc., 233 S.W.2d 472 (Tex.Civ.App. 1950, no writ).

In view of the foregoing considerations, you are advised that the total price paid under the contracts in question is the measure of the market value of the actual amount of gas produced and sold, based on the tax rate in effect at the time such gas is actually produced.

Our foregoing answers to question 1 and 2 preclude the answering of question 3.

-S U M M A R Y-

Under natural gas purchase contracts containing "take or pay" provisions, the time the gas is actually produced is the event which actuates the accrual of the tax under Ch. 3, Title 122A, Taxation-General, V.C.S.

The total price paid under any of such contracts is the measure of the actual amount of gas produced and sold thereunder, based on the tax rate in effect at the time such gas is actually produced.

Yours very truly,

CRAWFORD C. MARTIN
Attorney General of Texas

Prepared by R. L. Lattimore
Assistant Attorney General

APPROVED:
OPINION COMMITTEE

Kerns Taylor, Chairman
W.E. Allen, Co-Chairman

James Broadhurst
William Craig
Milton Richardson
Houghton Brownlee

SAMUEL D. MCDANIEL
Staff Legal Assistant

NOLA WHITE
First Assistant