Dean F. LUDDINGTON, trustee of the
Dean F. Luddington Retirement
Trust, Plaintiff,

v.

BODENVEST LTD., a Utah limited part-
nership; C. Dean Larsen, an individual;
EFF Fund, a Utah limited partnership;
Menacor, Inc., a Utah corporation; Pet-
ersen Investors, a Utah general partner-
ship; Foothill Thrift, a Utah corpora-
tion; and John Does 1 through 12, De-
fendants.

FOOTHILL THRIFT, now known as
Foothill Financial, a Utah corporation,
Counterclaimant, Cross–Complainant,
and Appellee,

v.

BODENVEST LTD., a Utah limited part-
nership; Dean F. Luddington, trustee
of the Dean F. Luddington Retirement
Trust; EFF Fund, a Utah limited part-
nership; Menacor, Inc., a Utah corpo-
ration; Petersen Investors, a Utah gen-
eral partnership; and John Does 1
through 12, Counterdefendants, Cross–
Defendants, and Appellant.

No. 900179.

Supreme Court of Utah.

Feb. 26, 1993.

Rehearing Denied June 22, 1993.

Richard A. Rappaport, Jeffrey L. Silvestrini, Martha S. Stonebrook, Salt Lake City, for Foothill Thrift.

Dennis K. Poole, Salt Lake City, for Foothill Financial.

Stephen R. Randle, Salt Lake City, for Bodenvest.

HOWE, Associate Chief Justice:

Bodenvest Ltd., a Utah limited partnership, appeals from a decree of foreclosure entered on a cross-claim filed against it by Foothill Thrift.

Until it filed bankruptcy in February 1987, Granada, Inc., was Bodenvest's general partner. Granada's common stock was owned by C. Dean Larsen, who was its president and one of its directors. Bodenvest's limited partners were retirement trusts established by various Utah medical practitioners. The primary purpose of the partnership, as stated in paragraph 2.1 of its certificate and agreement, was

> to acquire a parcel of undeveloped real property containing approximately seventy-two (72) acres located in West Jordan, Salt Lake County, Utah ... and the Partnership shall hold the subject for investment, and may from time to time sell parcels of said property to investors or may retain and sell the total parcel of property to one Buyer.

In paragraph 15.2B, the general partner is given the power

> to borrow money and, if security is required therefor, to mortgage or lien any portion of the property of the Partner-

ship ... as [the general partner] deems, in his absolute discretion, to be in the best interests of the Partnership.

The 72 acres were purchased by Bodenvest for approximately $385,000, including interest. The land was purchased on an installment contract and, by 1983, was paid for in full. In 1985, part of the land was sold for a hospital, netting Bodenvest $203,000. Following this sale, the assets of Bodenvest were comprised of the remaining 50.3 acres and the $203,000 cash. The only expenses of the partnership were annual property taxes (less than $150), the cost of preparing annual tax returns, and a small management fee.

In late 1984, Granada, by and through Larsen, began a series of three transactions in which the remaining 50.3 acres were encumbered to secure loans for the sole benefit of Granada or for Granada and Bodenvest. The first of these transactions was a $455,300 loan from Petersen Investors to Granada. The loan was secured by a trust deed on the 50.3 acres. Subsequently, a second trust deed on the property was recorded to secure a $150,000 loan to Bodenvest and Granada from the Dean F. Luddington Retirement Trust. A third trust deed (the one at issue in this case) was executed in April 1986 to Foothill Thrift by Granada to secure a ninety-day loan for $252,083 to meet Granada's business obligations. The trust deed became a first lien after Larsen arranged to have the Petersen Investors and the Luddington trust deeds reconveyed or subordinated. There is no evidence that the Bodenvest limited partners knew there were any encumbrances on the property until after Granada filed for bankruptcy many months later. Also, apparently without the knowledge of the limited partners, Granada borrowed $192,925 of Bodenvest's $203,000 cash proceeds. The loan, which was not evidenced by a promissory note, was entirely unsecured and has never been repaid.

When Foothill prepared the documentation for the $252,083 business loan, it had the property appraised at approximately $762,000. Foothill did not obtain a loan application or any financial information

from Bodenvest. It did, however, obtain a recent personal financial statement from Larsen and a one-year unaudited financial statement from Granada. The loan documents were all signed by Larsen in various capacities. The promissory note was signed by Larsen individually and for Granada as its president. The trust deed on the Bodenvest property was signed by Larsen as president of Granada, the general partner. A hypothecation statement was signed by Larsen for Granada as general partner of Bodenvest. In neither the trust deed nor the hypothecation statement is there any express reference to the promissory note. Foothill issued its check dated April 23, 1986, for $252,083, payable only to Granada. The evidence is undisputed that there was no benefit to Bodenvest from the loan, nor did Bodenvest guarantee the Granada–Larsen promissory note. Furthermore, Foothill makes no claim that Bodenvest subsequently ratified the transaction.

The principal and accrued interest were due in ninety days. Granada made no payment when the note fell due on July 22, 1986. On September 2, Granada made a $55,795.34 partial payment, and Foothill agreed to renew the note. Sometime after September 11, a renewal note to Foothill in the amount of $201,851 was executed for the balance owing. This renewal note was back-dated to July 22 and made payable on November 19, 1986. When the renewal note fell due, nothing was paid. A second renewal note, dated December 10, 1986, was executed for a six-month term, even though no payment had been made on the first renewal note. No further payments of either principal or interest were made by the maturity date, June 8, 1987.

Granada filed bankruptcy on February 13, 1987, and Larsen filed personal bankruptcy the following month. Both listed Foothill as a creditor. In May of 1987, the Dean F. Luddington Trust commenced this action against Larsen for fraud and legal malpractice, and against the other defendants, including Foothill Thrift and Bodenvest, seeking foreclosure of its trust deed. Foothill cross-claimed against ·Bodenvest for foreclosure.

A decree of foreclosure in favor of Pacific America Construction, Inc., successor to Foothill Thrift, was entered on Foothill's cross-claim. The decree rests primarily on three findings of fact as to Granada's authority to execute the trust deed to Foothill. In those findings, the trial court found authority in the hypothecation statement given in connection with the transaction which in turn was authorized by the certificate and agreement of the partnership. Additionally, the court based its finding of apparent authority for Granada's act on the fact that the limited partners had allowed Larsen to sign the certificate and agreement for them. The certificate and agreement was a public document. The court also noted that the Foothill officer who made the loan was unaware that Larsen and Granada had no authority to execute and deliver the trust deed on behalf of Bodenvest.

Bodenvest appeals, pursuant to rule 54(b) of the Utah Rules of Civil Procedure, assailing the findings of fact as insufficient to support the legal conclusion that Granada's act of encumbering the property was binding on Bodenvest. We begin our analysis by examining the Code provisions related to limited partnerships. Utah Code Ann. § 48-2-9, which was in effect at the time of the events in this case,[1] defines the rights, powers, and liabilities of a general partner. It provides:

A general partner shall have all the rights and powers, and be subject to all the restrictions and liabilities, of a partner in a partnership without limited partners, except that without the written consent or ratification of the specific act by all the limited partners, a general partner or all of the general partners have no authority to:

(1) Do any act in contravention of the certificate.

(2) Do any act which would make it impossible to carry on the ordinary business of the partnership.

(3) Confess a judgment against the partnership.

(4) Possess partnership property, or assign their rights in specific partnership property, for other than a partnership purpose.

■ Thus, a general partner has the same rights and powers in both a partnership and a limited partnership. Those rights and powers are set out in section 48-1-6:

(1) Every partner is an agent of the partnership for the purpose of its business, and the act of every partner, including the execution in the partnership name of any instrument for apparently carrying on in the usual way the business of the partnership of which he is a member, binds the partnership, unless the partner so acting has in fact no authority to act for the partnership in the particular matter and the person with whom he is dealing has knowledge of the fact that he has no such authority.

(2) An act of a partner which is not apparently for the carrying on of the business of the partnership in the usual way does not bind the partnership, unless authorized by the other partners.

We have held that a partner who is without actual authority has no power to bind the partnership in a transaction that is not within the ordinary and apparent scope of the partnership business. Any person dealing with a partner can only rely on the partner's acts if they are within the ordinary and apparent scope of the partnership business. *Peterson v. Armstrong*, 24 Utah 96, 102, 66 P. 767, 768 (1901). The burden of proof as to the partner's authority is on the party seeking to enforce the transaction. *Id.* at 102–03, 66 P. at 768.

■ The trial court stated in finding of fact 10 that Granada had actual authority to execute the trust deed to Foothill because "Bodenvest (by its General Partner Granada, through its President, Larsen) consented and agreed to encumber the Bodenvest real property as evidenced by a

---

**1.** Utah Code Ann. §§ 48-2-1 to -27, Limited Partnership, was repealed by 1990 Utah Laws ch. 233, § 71. The Utah Revised Uniform Limited Partnership Act is currently found at Utah Code Ann. §§ 48-2a-101 to -1107.

hypothecation statement dated April 23, 1986, executed by Bodenvest." The hypothecation statement reads:

> For valuable consideration, and as an inducement to Foothill Thrift to loan money and grant credit from time to time to Bodenvest Ltd., a Utah limited partnership by Granada, Inc., general partner C. Dean Larsen, president, the undersigned promises to execute, acknowledge and deliver to Foothill Thrift as Beneficiary, a trust deed of even date hypothecating title and interest in and to that certain property located in Salt Lake County, State of Utah....

The statement was signed by Larsen as Granada's president and Bodenvest's general partner. There is a fatal flaw in the hypothecation statement that prevents Foothill from relying upon it as authority for Granada to encumber the partnership property. That flaw is that the statement is given as an inducement to Foothill "to loan money and grant credit from time to time to Bodenvest Ltd." The loan of money here was not to Bodenvest. It was not a signatory on the promissory note. Bodenvest's name was not on the check disbursing the loan proceeds; the check was made solely to Granada. In short, the hypothecation statement did not authorize Granada to encumber partnership property to secure a loan to the general partner. Foothill suggests that the statement was originally drawn to read "to loan money and grant credit from time to time to Granada, Inc." and that possibly through a mutual mistake, the words "Granada, Inc." were whited out and the words "Bodenvest Ltd." were inserted. Be that as it may, there was no motion or request to reform the statement. We must therefore construe it according to its present plain wording. As such, it affords no basis for the trial court's finding that Foothill "intended that the hypothecation statement be authority from Bodenvest to encumber its property for the April [1986] Note executed by Granada and Larsen."

■ Foothill argues that, despite the defect in the hypothecation agreement, the certificate and agreement of limited partnership authorized Bodenvest to engage in business other than acquiring and selling the 72 acres of land; that Bodenvest had previously borrowed from and loaned money to other partnerships controlled by Granada; and that its books showed accrued interest owing to it on money it had loaned. Foothill refers us to paragraph 15.21 of the limited partnership agreement, which authorized Bodenvest to borrow money and secure the loan by hypothecating its assets. It also provides that the lender is not required to ascertain the purposes for which the loan is sought and that as between the lender and Bodenvest, it shall be conclusively presumed that the proceeds of the loan will be used for authorized partnership purposes. While all the foregoing is correct, it does not aid Foothill. In the Foothill transaction, Bodenvest was neither a lender nor a borrower. It simply provided the security for a loan made to its general partner and its president. Nothing in the certificate and agreement or in partnership law supports the use of partnership assets for such a purpose.

In a case with similar facts where a general partner borrowed money for non-partnership purposes, but partnership property was pledged to secure the loan, the Washington Court of Appeals stated: "[T]he Bank knew that [the partnership] received no benefit whatsoever in encumbering the real estate in question. Nevertheless, the Bank actively participated in a security agreement, which had the effect of rendering the limited partnership ... valueless...." *Gustafson v. Gustafson*, 47 Wash.App. 272, 280, 734 P.2d 949, 955 (1987). The court held that the partnership was not bound by the general partner's act in pledging the partnership property when there was no benefit to the partnership. Therefore, we conclude that to the extent the trial court found that Granada had actual authority to bind the partnership in this instance, that finding is clearly erroneous and must be set aside. Utah R.Civ.P. 52(a).

■ However, even though an agent's act is not actually authorized by the principal, the principal may nevertheless be liable to a third party based on the doctrine of

apparent authority. Section 27 of the Restatement (Second) of Agency (1957) defines apparent authority as "conduct of the principal which, reasonably interpreted, causes the third person to believe that the principal consents to have the act done on his behalf by the person purporting to act for him."

When Bodenvest was organized in 1976, a certificate and agreement of limited partnership was executed by the general partner and by the limited partners pursuant to statute. The document was filed in the office of the clerk of Salt Lake County, where its principal place of business was to be located. The general partner, Granada, executed the certificate and agreement by and through its president, Larsen. The limited partners did not sign individually. Their names were listed, and Larsen signed for them "as trustee or administrator." In finding of fact 20, the trial court stated that because the limited partners had allowed Larsen to sign the certificate and agreement on their behalf, they had thereby imbued him with apparent authority to execute the trust deed to Foothill Thrift. That finding of fact reads:

> The Limited Partners of Bodenvest allowed Larsen to sign the Certificate and Agreement of Limited Partnership (Exhibit "P–1") which became a public, recorded document telling the world that Larsen was clothed with actual or apparent authority on behalf of such Limited Partners in matters related to Bodenvest.

■ "The doctrine of apparent authority has its roots in equitable estoppel." *J.H. v. West Valley City*, 840 P.2d 115, 128 (Utah 1992) (Howe, Assoc. C.J., dissenting). "[I]t is founded on the idea that where one of two persons must suffer from the wrong of a third the loss should fall on that one whose conduct created the circumstances which made the loss possible." *Id.* In order to show apparent authority, the following must be established:

> (1) that the principal has manifested his [or her] consent to the exercise of such authority or has knowingly permitted the agent to assume the exercise of such authority; (2) that the third person knew of the facts and, acting in good faith, had reason to believe, and did actually believe, that the agent possessed such authority; and (3) that the third person, relying on such appearance of authority, has changed his [or her] position and will be injured or suffer loss if the act done or transaction executed by the agent does not bind the principal.

Am.Jur.2d *Agency* § 80 (1986); *see City Elec. v. Dean Evans Chrysler–Plymouth*, 672 P.2d 89, 90 (Utah 1983) ("It is the principal who must cause third parties to believe that the agent is clothed with apparent authority.").

■ There are several problems with the application of apparent authority in this case. First, most of the original limited partners who allowed Larsen to sign the certificate and agreement for them in 1976 were no longer members of the partnership at the time of the Foothill transaction in 1986. Many of them had withdrawn from Bodenvest and had been replaced by other retirement trusts. Second, there is no evidence that Larsen purported to give the consent of the limited partners to the Foothill transaction. He did not attempt to sign for them as he had done on the certificate and agreement. Nor does Foothill contend that it actually relied on Larsen's signing for the partners in 1976 as an expression of their consent to this transaction ten years later. Third, it does not follow that because the limited partners once allowed Larsen to sign for them, Granada was somehow authorized to engage in subsequent unauthorized acts on behalf of the partnership. The certificate and agreement, the same document that Foothill contends empowered Granada to act on behalf of the limited partners, also limits such power. The certificate and agreement clearly gives Bodenvest the power to borrow money and pledge partnership property as security, upon such terms and in such amounts as the general partner deems, in its absolute discretion, to be in the best interests of the partnership. As we have already observed, the general partner did not borrow money for the partnership. Bodenvest was not a signatory on the promissory note and did not receive any of the

loan proceeds. Additionally, section 15.3 of the certificate and agreement provides:

> The general partner shall have all the rights and powers and be subject to all the restrictions and liabilities of a partner in a partnership without limited partners, except that the general partner has no authority to:
>
> . . .;
>
> (B) Do any act which would make it impossible to carry on the ordinary business of the partnership;
>
> . . .;
>
> (D) Possess partnership property or assign the rights of the partnership in specific partnership property for other than a partnership purpose.

Encumbering the property to provide security for a loan to the general partner arguably violates subparagraph B by jeopardizing the continuation of the business of the partnership, which was to acquire and later sell the 72 acres of land. It is even more clear, however, that subparagraph D was violated since the encumbrance of the partnership property was for other than a partnership purpose. Section 48–2–9 provides that a general partner has authority to do those acts prohibited in subparagraphs B and D only with the written consent or ratification of the specific act by all the limited partners. No attempt was made here to obtain such consent.

■ Foothill also contends that the failure of the limited partners to object when Larsen on two prior occasions encumbered partnership property to secure loans to Granada constituted apparent authority. Although the trial court made no finding on this point, we will consider it as possible support for the trial court's legal conclusion. The Bodenvest land had been used to secure two prior loans, one from Petersen Investors and one from Luddington. Foothill argues that these prior transactions made its transaction "appear to be a routine Bodenvest partnership transaction." There are several problems with this argument. First, only one of the prior transactions, the Petersen loan, was solely for Granada; the Luddington loan was for Granada and Bodenvest jointly. Second,

the limited partners were not aware of either of these loans. In order to support a theory of apparent authorization by the limited partners' failure to object, Foothill would have to prove that the partners were aware of the prior transactions. Otherwise, the failure to object cannot be construed as apparent authority.

■ Even if we were to agree with Foothill that Granada had apparent authority because Larsen signed the certificate and agreement for the partners or because the limited partners failed to object when the Bodenvest property was encumbered on two prior occasions, it is clear that Foothill was not reasonable in relying on any apparent authority in this instance. Section 48–1–6(2) provides, "An act of a partner which is not apparently for the carrying on of the business of the partnership in the usual way does not bind the partnership, unless authorized by the other partners." Therefore, Foothill could rely on any apparent authority only to the extent that it was being exercised in pursuance of partnership business "in the usual way." Clearly, there was nothing "usual" about the Foothill transaction. As heretofore observed, the encumbering of its property to secure loans made to others was not the usual business of Bodenvest. We held in *Peterson v. Armstrong*, 24 Utah at 102, 66 P. at 768, that a person dealing with a partner who is without actual authority has no power to bind the partnership in a transaction which is not within the ordinary and apparent scope of the partnership business. A corollary to the rule stated in section 48–1–6(2) is found in Restatement (Second) of Agency at section 262, comment (a): "A person relying upon the appearance of agency knows that the apparent agent is not authorized to act except for the benefit of the principal." It should have been readily apparent to Foothill that there was no benefit to Bodenvest in encumbering its property.

■ Finding of fact 20, that Larsen had apparent authority to engage in the Foothill transaction, is clearly erroneous and must be set aside. Utah R.Civ.P. 52(a). Additionally, finding of fact 11, that the loan officer at Foothill "had no knowledge

from Larsen or any limited partner of Granada that Larsen had no authority to execute and deliver the Foothill Trust Deed," does not support the decree of foreclosure. This lack of knowledge does not assist Foothill because the transaction was not for the carrying on of Bodenvest's business "in the usual way." *See* Utah Code Ann. § 48-1-6(1), (2).

In summary, the findings of fact that Granada had actual and apparent authority to encumber the partnership property to Foothill are clearly erroneous and must be set aside. The trust deed executed and delivered to Foothill to secure a loan to the general partner and its president was totally without authorization by the partnership owner. The decree of foreclosure is reversed, and the case is remanded to the trial court for further proceedings consistent with this opinion.

STEWART and DURHAM, JJ., and Russell W. Bench, Court of Appeals Judge, concur.

ZIMMERMAN, Justice: (dissenting).

I cannot join the majority in concluding that the trial court's findings are clearly erroneous. Considering the evidence in a light most favorable to the trial court, I find it sufficient to support the trial court's action. I fear that the majority has appraised the circumstances surrounding the loan in the bright gleam of hindsight rather than as the lender legitimately could have seen them at the time of the loan. I understand the sympathy one might feel for those who would be harmed by a ruling upholding the validity of Foothill's security interest, but sympathy alone cannot warrant imposing, de facto, an extraordinarily high duty of inquiry on the lender to police the internal operations of a partnership that had the misfortune of having Granada as a general partner.

HALL, C.J., having disqualified himself, does not participate herein; BENCH, Court of Appeals Judge, sat.