1999 UT 87

**PACIFIC AMERICAN CONSTRUCTION, Plaintiff and Appellee,**

v.

**SECURITY UNION TITLE, Defendant and Appellant.**

No. 970495.

Supreme Court of Utah.

Sept. 10, 1999.

Dennis K. Poole, Andrea Nuffer Godfrey, Salt Lake City, for plaintiff.

Michael W. Homer, H. Michael Drake, J. Angus Edwards, David A. Cutt, Suitter Axland, Salt Lake City, for defendant.

DURHAM, Associate Chief Justice:

¶ 1 Appellant Security Union Title ("Security") appeals from a final judgment in favor of Appellee Pacific American Construction ("Pacific") following a bench trial before the district court.

¶ 2 This dispute is related to the case of *Luddington v. Bodenvest, Ltd.*, 855 P.2d 204 (Utah 1993), the operative facts of which are relevant here. In the early 1980s, Granada, Inc., general partner for Bodenvest, Ltd., and its president, C. Dean Larsen, obtained a loan from Foothill Thrift, Pacific's predecessor. Although the loan proceeds were disbursed to Granada alone, the loan was purportedly secured by a trust deed on property owned by Bodenvest. In 1987, Granada filed for bankruptcy. Luddington (a limited partner of Bodenvest) filed suit against Bodenvest and Foothill Thrift, among others, seeking foreclosure of the trust deed. Foothill Thrift cross-claimed against Bodenvest for foreclosure. Ultimately, a decree of foreclosure was entered in favor of Foothill Thrift. On appeal, this court reversed the decree, concluding that "the trust deed executed and delivered to Foothill to secure a loan to [Granada] was totally without authorization" and that Bodenvest received no consideration for purportedly providing the security on the loan.

¶ 3 Following the decision in *Luddington,* Pacific filed this suit against Security and Meridian Title Company, seeking indemnification based on a title insurance policy (the "Policy") on the mortgage lien in dispute in *Luddington.* The Policy had been issued to Foothill Thrift by Security's predecessor, Safeco Title Insurance, through Meridian Title Company. At trial, the court concluded that Pacific's losses were covered by the Policy. Security now challenges that ruling.

¶ 4 Security's principal argument is that the trial court erred by failing to recognize that the Policy did not insure the validity of the debt underlying the mortgage lien, and accordingly does not cover the losses sustained by Pacific. Because we reverse the trial court's holding on this question, we need not address the other issues raised on appeal. We review the trial court's interpretation of the insurance contract for correctness. *See AOK Lands, Inc. v. Shand, Morahan & Co.,* 860 P.2d 924, 925 (Utah 1993).

¶ 5 In Utah, title insurance insures, guarantees, or indemnifies the

> owners of real or personal property or the holders of liens or encumbrances on that property, or others interested in the property against loss or damage suffered by reason of liens or encumbrances upon, de-

fects in, or the unmarketability of the title to the property, or invalidity or unenforceability of any liens or encumbrances on the property.

Section 31A–1–301(78) Utah Code Ann. (1994). "[P]arties [to a title insurance contract] are free to define the exact scope of the policy's coverage and may specify the losses and encumbrances the policy is intended to encompass." *Valley Bank & Trust v. U.S. Life Title Ins. Co.*, 776 P.2d 933, 936 (Utah Ct.App.1989).

¶ 6 Under the terms and conditions of the Policy, Security insured Pacific against loss or damage "sustained or incurred by reason of: ... [t]he invalidity or unenforceability of the lien of the insured mortgage upon said estate or interest...." This general insuring clause is subject to several exceptions that we do not address here.

¶ 7 The trial court found, and appellee argues, that Pacific's losses were covered under this general insuring clause. The trial court reasoned that Pacific, as a successor in interest to Foothill Thrift, was "covered against loss or damage arising from the invalidity or unenforceability" of the trust deed, and the trust deed had been declared invalid by this court in *Luddington.* At first blush, this reasoning seems both straightforward and sound. However, the trial court's reading of *Luddington* is slightly but critically inaccurate. In *Luddington,* we did not hold that the trust deed was invalid or unenforceable *per se;* rather, we held that the trust deed was not enforceable *against Bodenvest,* because "Bodenvest was neither a lender nor a borrower" and received no benefit from the transaction. *Id.* at 208. Thus, the deficiency this court found was not in the trust deed or in the title to the land, but was rather in the failure of the obligation underlying the mortgage lien. Bodenvest received no consideration in exchange for the use of its property as security for the loan to Granada. *See id.* at 210. As has been recognized elsewhere, "[f]ailure of consideration is

not a covered loss" under the policy language at issue here. *Gerrold v. Penn Title Ins. Co.,* 271 N.J.Super. 50, 637 A.2d 1293, 1295 (App. Div.1994) (interpreting the same language).[1]

¶ 8 Our holding is necessitated by the rule that "a mortgage lien and a mortgage debt are two entirely different ... species.... [A] guarantee of the validity of the mortgage lien cannot and should not be construed as guaranteeing that the insurer has made a careful investigation of the origin of the mortgage debt and guarantees its payment or validity." *Bank of Miami Beach v. Fidelity & Cas. Co.,* 239 So.2d 97, 99 (Fla.1970). "Generally stated, the provision [at issue here] insures against defects in the mortgage itself, but not against problems arising from or related to the underlying debt." *Lawyers Title Ins. Corp. v. JDC (America) Corp.,* 52 F.3d 1575, 1583 (11th Cir.1995); *see also* 60 A.L.R.2d 972, 976 (1958) (stating "a title policy insuring a mortgagee insures only the title to the land securing his debt and not the debt"). In other words, the losses Pacific sustained did not result from a failure of the insured lien; they resulted instead from the failure of the underlying debt claim against Bodenvest. This is demonstrated by the fact that if Bodenvest ·had received funds from the loan at issue, the trust deed would have been enforceable against it.

¶ 9 As the trial court found, Pacific's predecessor did not provide Meridian or Security with a copy of the hypothecation statement in which the "fatal flaw" (demonstrating that the deed was unsupported by consideration to Bodenvest) was found. The court also found that it was not the normal course of business for the lender to provide promissory notes or hypothecation statements to title companies when requesting title insurance. It would be unreasonable to expect a title company to insure a debt about which it typically would have only limited knowledge and over which the lender would

---

1. Appellee argues that in *Luddington* this court did not "invalidate" the debt owed and that therefore there has been no failure of the underlying debt. Appellee misconstrues this court's ruling. In *Luddington,* there was no debt owed by Bodenvest to invalidate. Moreover, the debt

owed by Granada and its president to Foothill was not at issue in the case except to the extent that we held that the debt owed by Granada was not secured by the trust deed because Bodenvest had received no consideration for providing its property as security on the loan.

have sole control.[2] A lender—not a title company—is in the best position to insure that the debt underlying a mortgage is valid. Thus, absent specific policy language to the contrary, the lender bears the risk that the mortgage debt is invalid.

¶ 10 In conclusion, we find that the insuring clauses of the Policy do not cover losses arising, as here, from a failure of the debt underlying the mortgage. Accordingly, we reverse the trial court's ruling and order dismissal of the case against Security.

¶ 11 Chief Justice HOWE, Justice STEWART, Justice ZIMMERMAN, and Justice RUSSON concur in Associate Chief Justice DURHAM's opinion.

---

**2.** The trial court specifically found that in this case Pacific had, at best, constructive knowledge of the absence of the consideration supporting the trust deed. This does not change the analysis of whether the language at issue here guaranteed the validity of the mortgage debt.