FILED
United States Court of Appeals
Tenth Circuit

February 15, 2013

Elisabeth A. Shumaker
Clerk of Court

UNITED STATES COURT OF APPEALS

TENTH CIRCUIT

---

NATURE'S SUNSHINE PRODUCTS,

      Plaintiff - Counter-Defendant -
Appellee,

v.

THE SUNRIDER CORPORATION, a
Utah corporation,

      Defendant - Counter-Claimant
- Appellant,

------------------
TEI-FU CHEN,

      Counter-Claimant-Appellant.

No. 11-4214
(D.C. No. 2:09-CV-00896-TC-BCW)
(D. Utah)

---

**ORDER AND JUDGMENT**[*]

---

Before **BRISCOE,** Chief Judge, **LUCERO** and **HARTZ**, Circuit Judges.

In this diversity action, The Sunrider Corporation (Sunrider) and Tei-Fu

Chen appeal the district court's decision to grant the motion to enforce a

settlement filed by Nature's Sunshine Products, Inc. (Nature's Sunshine).

---

[*] This order and judgment is not binding precedent, except under the
doctrines of law of the case, res judicata, and collateral estoppel. It may be cited,
however, for its persuasive value consistent with Fed. R. App. P. 32.1 and 10th
Cir. R. 32.1.

Exercising jurisdiction under 28 U.S.C. § 1291, we affirm.

**I**

In October 2009, Nature's Sunshine sued Sunrider on various state and federal claims, including trademark infringement, unfair competition, and cybersquatting. App. at 12. Sunrider counterclaimed,[1] seeking, among other relief, a declaratory judgment that Nature's Sunshine fraudulently obtained the disputed trademarks. App. at 49. As the dispute before us concerns only whether the district court properly enforced a settlement, we need not discuss these underlying claims.

During the discovery phase of this litigation, Joshua Gigger, outside counsel for Nature's Sunshine, emailed Arthur Berger, outside counsel for Sunrider, about the possibility of mediation. App. at 367. But, Gigger said, "[o]bviously a mediation only makes sense if each party provides a representative with complete authority to settle." Id. Berger responded that Sunrider had someone with authority that could attend and suggested they finalize the details. Id. at 372. The outside attorneys signed an agreement to mediate in April. Id. at 375-78. One term of the agreement specified that "[t]he Parties agree to participate in good faith and will attend with one or more persons who have full settlement authority to resolve the disputes between the parties." Id. at 375.

---

[1]    Tei-Fu Chen also joined in filing these counterclaims.

2

On April 15, 2011, the parties engaged in mediation. Id. at 394. Owen Smigelski, in-house counsel for Sunrider, attended the mediation with outside counsel and sent updates to Sunrider executives throughout the day. Id. at 394-95. These executives now allege that they limited Smigelski's authority before sending him to the mediation. Id. at 395. Specifically, Sunrider executives allege that they told Smigelski that they wanted to: 1) approve any settlement agreement; 2) retain the right to use the trademark name with certain products; and 3) limit the geographic reach of any settlement. Id. Sunrider never communicated these alleged limitations on Smigelski's authority to Nature's Sunshine. Id. at 411.

The April 15 mediation did not result in a settlement. However, the parties continued to discuss settlement terms after the one-day mediation. On April 16, Gigger sent to Sunrider's outside counsel a draft of the settlement. Id. at 71. Three days later, Samuel Straight, another outside attorney for Sunrider, responded with proposed revisions, suggesting he had spoken to Smigelski. Id. at 94. Gigger replied on April 22, agreeing to most changes and making a few other modifications. Id. at 124.

On April 26, Berger responded with four more points, but expressed his belief the parties were close to a deal. He said, "Sunrider and Tei-Fu Chen feel strongly about the above issues and stand ready to execute the agreement with these changes." Id. at 184. On May 4, he suggested additional changes,

3

including limiting the agreement so that Sunrider did not need to change product labels or packaging overseas.[2]  Berger told Nature's Sunshine's lawyers that if the changes were not acceptable, "Sunrider proposes that we simply limit the agreement to the U.S., which is all that would be available to [Nature's Sunshine Products] in the suit in any event."  Id. at 265.  Gigger said he would discuss the latest draft with Nature's Sunshine.  Id. at 295.

Gigger on May 19 sent an e-mail to Berger to say Nature's Sunshine agreed to those changes.  Id. at 297.  It read:

> As mentioned in my voice message, Nature's Sunshine had an opportunity to discuss Sunrider's most recent changes with its international personnel.  In short, Nature's Sunshine agrees to all of Sunrider's changes so long as Sunrider will agree to amend Section 4 (trade dress) to confirm our understanding that it applies on an international basis.
>
> If this clarification is agreeable to Sunrider, then the only outstanding issue is Sunrider's labels/marketing materials.  Did you have an opportunity to confirm whether the domain name/trade name/logo is the proper size?

The next day, on May 20, Berger enthusiastically replied to the email on Sunrider's behalf:

> That's good news.  Yes, we can clarify that section 4 concerning trade dress applies internationally.  We have asked our marketing people to put together a revised mockup of product label compliant with paragraph 3.e.  We should have

---

[2]  It appears as though there were discussions by the lawyers between the time the two emails were sent, but the parties did not include them in their appendices and the district court did not reference them in its opinion.

4

that on Monday. Also, we can revise Exhibit 5 (the consent to register) so that paragraph ii. includes "Blends of processed herbs" in Class 30 – we can delete Class 29.

Id. at 299. The following Monday, Berger sent Gigger a revised product label to serve as an exhibit referenced in the settlement agreement. Id. at 301. Nature's Sunshine claims this May 20 email represented the point at which the parties reached an agreement. Id. at 405.

On May 25, Gigger sent out the final draft of the agreement with the following email:

> Attached are a clean and a redline verison of what should be the final agreement. Please note, however, that I don't have anything to include exhibit 2 for the Sunrider trade dress other than the labels that you sent on Monday, which are already included in exhibit 1. Let me [sic] if there is something else that you contemplate being included there. Once this issue is finalized we can revise the Effective Date and distribute for signatures.

Id. at 305.

In a June 29 telephone conversation, Berger told Gigger that Sunrider refused to sign the agreement without additional changes. Supp. App. at 3-4. Specifically, Sunrider wanted: 1) to limit the scope of the agreement to the United States; and 2) to include the right to use the trademark internationally with respect to certain goods. Id. In affidavits filed while the motion to enforce the settlement was pending, Sunrider executives state that they never even read a summary of the terms of the agreement until May 24 and did not see the full

5

agreement until May 27. App. at 396, 401. They state that they did not know Smigelski had told the company's outside counsel that Sunrider would agree to terms that exceeded his settlement authority.

In July 2012, Nature's Sunshine filed a motion to enforce the settlement agreement. Nature's Sunshine claimed the May 20 email formalized the agreement between the parties. Id. at 405. Sunrider responded that Utah law requires a settlement made in mediation must be in writing and signed, and that Smigelski lacked authority to agree to the settlement. Id. at 406.

The district court granted the motion to enforce the settlement agreement. First, the court ruled that Utah's law requiring written and signed agreements for settlements reached in mediation did not apply to settlements the parties agreed to after additional discussions following a failed mediation. Id. at 407-08. The court went on to state that even if it were to apply the "written and signed" requirement in this case, Utah law does not always require the parties sign a settlement reached in mediation. The court said that emails between the attorneys could satisfy the writing requirement for settlements reached in mediation. Id. at 408.

Second, the court rejected the argument that Smigelski's lack of authority prevented the formation of an agreement. Id. at 409-11. The court concluded that Smigelski had apparent authority to agree to a settlement, noting that "Sunrider represented to Nature's Sunshine that Mr. Smigelski had full authority to settle

6

the case." Id. at 409. The court stated that any limitations placed on Smigelski's

authority could not prevent the formation of an agreement because Sunrider never

disclosed these limitations to Nature's Sunshine. Id. at 410-11. Therefore,

"Sunrider is bound to the same extent as though [the limitations] were not given."

Id. at 411 (quotation omitted). Sunrider appeals.

## II

*1. Introduction*

"A trial court has the power to summarily enforce a settlement agreement

entered into by the litigants while litigation is pending before it." United States

v. Hardage, 982 F.2d 1491, 1496 (10th Cir. 1993). "Issues involving the

formation and construction of a purported settlement agreement are resolved by

applying state contract law." Shoels v. Klebold, 375 F.3d 1054, 1060 (10th Cir.

2004). Under Utah law, courts will enforce settlement agreements "if the record

establishes a binding agreement and the excuse for nonperformance is

comparatively unsubstantial." Zions First Nat'l Bank v. Barbara Jensen Interiors,

Inc., 781 P.2d 478, 479 (Utah Ct. App. 1989) (quotation omitted).[3]

"We review a district court's decision regarding the enforcement of a

---

[3] Sunrider argues the district court should have conducted an evidentiary hearing to ensure the record established a binding agreement. But we have held only that an evidentiary hearing is necessary when "material facts concerning the existence or terms of an agreement to settle are in dispute." Hardage, 982 F.2d at 1496. No material facts are in dispute in this case, only their legal significance.

7

settlement agreement for an abuse of discretion." Feerer v. Amoco Production Co., 242 F.3d 1259, 1262 (10th Cir. 2001). "An abuse of discretion occurs only when the trial court bases its decision on an erroneous conclusion of law or where there is no rational basis in the evidence for the ruling." Awad v. Ziriax, 670 F.3d 1111, 1125 (10th Cir. 2012) (citation and quotation omitted). We review any question of law de novo. Feerer, 242 F.3d at 1262.

*2. The Record Shows the Parties Formed a Binding, Enforceable, Agreement*

As stated above, Utah law requires we first determine whether a binding agreement was formed. Sunrider argues there is no binding agreement because Smigelski lacked authority: 1) to enter into an agreement with these terms; and 2) to enter into any agreement following the one-day mediation. Because Nature's Sunshine reasonably relied on Smigelski's apparent authority, we reject these arguments and hold the parties formed a binding agreement.

In Utah, "the general principle of the law of agency is that principals are bound by acts of their agents which are within the apparent scope of the authority of the agent and a principal will not be permitted to deny such authority against innocent third parties who have relied on that authority." Forsyth v. Pendleton, 617 P.2d 358, 360 (Utah 1980).[4] "It is the principal who must cause third parties

---

[4] Sunrider also argues that Nature's Sunshine must establish it "'changed [its] position and will be injured or suffer loss if the act done or transaction

(continued...)

8

to believe that the agent is clothed with apparent authority." City Elec. v. Dean Evans Chrysler-Plymouth, 672 P.2d 89, 90 (Utah 1983). However, the principal can signal to a third party that the agent has authority through both words and conduct. See Restatement (Second) of Agency § 27; Restatement (Third) of Agency § 3.03 (apparent authority created by principal's manifestation); id. § 1.03 (defining *manifestation* to include both words and conduct).

Prior to the mediation, Sunrider's counsel signed an agreement representing that the company would send someone to the mediation with full authority to settle. By sending Smigelski to the mediation, Sunrider cloaked him with apparent authority. A third party would reasonably interpret Sunrider's decision to send Smigelski to the mediation as a manifestation by Sunrider that Smigelski—who also held the title "senior counsel"—had authority to agree to a

---

[4](...continued)
executed by the agent does not bind the principal.'" Reply Br. at 8 (quoting Luddington v. Bodenvest Ltd., 855 P.2d 204, 209 (Utah 1993)). Although Luddington stated this as a requirement of proving an agreement existed based on apparent authority, it was not necessary to its holding. Sunrider does not point to a Utah case that hinged on a changed position requirement, and more recent cases from the Utah Supreme Court omit the requirement in their recitation of the law. See, e.g., Workers' Compensation Fund v. Wadman Corp., 210 P.3d 277, 281 (Utah 2009). Further, the Restatement (Second) of Agency § 8 cmt. d explicitly rejects this as a requirement. See also Restatement (Third) of Agency § 2.03 cmt. e (detrimental reliance not necessary to establish apparent authority). But even assuming Nature's Sunshine must prove this, "it is not irrational to hold that merely entering into a contract is a change of position which would enable the third person to bring an action against the principal." Restatement (Second) of Agency § 8 cmt. d.

settlement. Sunrider did not tell Nature's Sunshine about any limitations on Smigelski's settlement authority. Nor did Sunrider tell Nature's Sunshine that Smigelski's settlement authority expired following the one-day mediation. As Nature's Sunshine did not know of these alleged limitations on Smigelski's settlement authority, it was reasonable for Nature's Sunshine to assume Smigelski could agree to terms that would be binding on Sunrider. See Omega Engineering, Inc. v. Omega, S.A., 432 F.3d 437, 447 (2d Cir. 2005) ("Every agent is likely to have secret negotiating limits dictated by the principal, but other parties may safely assume that any agreement the agent agrees to is within his authority unless there is reason to believe he is exceeding it.").

We do not agree with Sunrider that Nature's Sunshine needed to reassure itself of Smigelski's authority following the conclusion of the mediation. The case Sunrider relies on, Luddington v. Bodenvest Ltd., 855 P.2d 204 (Utah 1993), is factually distinguishable from the present case. In Luddington, the court held a third party was not justified in concluding an agent retained authority because the third party relied, in part, on a different transaction the agent had conducted on behalf of the principals ten years earlier. Id. at 209. We see nothing in the facts of this case that would have alerted Nature's Sunshine of a need to verify that Smigelski had authority to agree to the final terms of an agreement that was the

10

logical outgrowth of the very recently concluded mediation.[5] Cf. Restatement (Second) of Agency § 129 ("Unless otherwise agreed, if the agent properly begins to deal with a third person and the principal has notice of this, the apparent authority to conduct the transaction is not terminated by the termination of the agent's authority by a cause other than the incapacity or impossibility, unless the third person has notice of it."); Restatement (Third) of Agency §3.11 cmt. c (termination of actual authority, for whatever reason, does not terminate apparent authority unless third party has notice). Indeed, any contrary rule would impede settlement negotiations. Were repeated reassurances of negotiation authority required during on-going negotiations, negotiations would stall at each proposed change in settlement terms until the party's top-level officers reaffirmed that the individual or individuals it sent to negotiate continued to have the authority to settle.

Nor do we believe it material that the parties communicated only through outside counsel following mediation. Simply retaining an attorney might not necessarily signal to a third party that the principal had granted *the attorney* the power to settle a lawsuit. See Fennell v. TLB Kent Co., 865 F.2d 498, 502 (2d Cir. 1989) ("A client does not create apparent authority for his attorney to settle a case merely by retaining the attorney."). But we do not have an allegation of

---

[5] Notably, these email discussions also continued to copy the mediator.

11

rogue outside counsel here. Instead, Smigelski, whom Nature's Sunshine reasonably believed had full authority to settle, represented Sunrider at a mediation that brought the parties close to settlement. In light of the ethical limitations on an attorney's ability to communicate directly with a party represented by counsel, see Utah R. Prof. Conduct 4.2, Nature's Sunshine was justified in finalizing these negotiations through email discussions in which opposing counsel represented that they were in continued contact with Smigelski. See, e.g., App. at 94.

Finally, we reject Sunrider's argument that we will discourage settlements by permitting agents with apparent authority to make agreements in excess of their actual authority. Sunrider argues parties would always need to reveal at the outset of negotiation their true parameters for settlement to avoid their agents binding them to undesired terms. But negotiating parties obviously have other means of limiting unwanted exposure without taking a reveal-all approach. For instance, principals can simply take steps to ensure they employ responsible agents, or ensure that these agents follow directions once employed.

*3. Sunrider's Excuse for Nonperformance is Unsubstantial*

Sunrider argues that even if we find that the parties formed a binding agreement, we should refuse to enforce the settlement because Sunrider's excuse for nonperformance—Smigelski exceeding his actual authority—is not unsubstantial. See Zions First Nat'l Bank, 781 P.2d at 479 (Utah App. 1989).

12

However, Sunrider does not cite to a single case in which a Utah court has actually excused a party's nonperformance in a settlement agreement on the basis of a substantial excuse. Nor has it cited to a single case from any jurisdiction that suggests courts would excuse a party from a contract because an agent with apparent authority exceeded supposed secret limitations. In the absence of any persuasive authority to the contrary, we conclude the district court correctly applied Utah law by enforcing this settlement.

### III

Alternatively, Sunrider argues we should refuse to enforce this agreement because of its belief that <u>Reese v. Tingey Constr.</u>, 177 P.3d 605, 611 (Utah 2008), requires settlements reached in mediation be written and signed by the parties. The district court here held that the agreement was not reached in mediation, because counsel continued to negotiate the settlement for weeks after the mediation ended, and that, even if the court were to assume that the agreement was reached through mediation, the emails between outside counsel met the writing requirement. App. at 407-08.

Here, the settlement was not reached during mediation, but rather a binding enforceable agreement was reached by subsequent negotiations. Smigelski's apparent authority to negotiate ultimately bound Sunrider to the agreement reached. As the agreement reached was not achieved during mediation, we need not determine if the "written and signed" requirements set forth in <u>Reese</u> were

13

also satisfied.

## IV

We AFFIRM the district court's order granting Nature's Sunshine's motion to enforce the settlement agreement.  We DENY Nature's Sunshine's motion to strike portions of Sunrider's reply brief, or in the alternative grant it leave to file a surreply.

Entered for the Court

Mary Beck Briscoe
Chief Judge

14